[Cite as *State ex rel. Falgiani v. Indus. Comm.*, 2017-Ohio-719.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Dominic J. Falgiani, | : | |
| Relator, | : | |
| v. | : | No. 16AP-361 |
| Industrial Commission of Ohio and Altronic Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 28, 2017

**On brief:** *Heller, Maas, Moro & Magill Co., LPA, Joseph A. Moro*, and *Patrick J. Moro*, for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Shaun P. Omen*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} In this original action, relator, Dominic J. Falgiani, requests this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find relator is entitled to said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny the request for a writ of mandamus.

{¶ 3} Relator has filed the following objection to the magistrate's decision:

> The Magistrates reliance upon *State ex rel. Wood* [*v. Indus. Comm.*, 78 Ohio St.3d 414 (1997)] in finding that Dr. Gade-Pulido's [report] is not inconsistent is improper as that case inapplicable to the instant matter.

(Sic passim.)

{¶ 4} Relator argues the magistrate incorrectly found that the commission did not abuse its discretion when it denied his application for PTD compensation. Specifically, relator argues that Dr. Karen Gade-Pulido's report is internally inconsistent and, therefore, cannot constitute "some evidence" to support the denial of PTD compensation. Relator argues that Dr. Gade-Pulido's report must be considered together with the definition of "light work" pursuant to Ohio Adm.Code 4121-3-34(B)(2)(b). Relator argues the magistrate erred in applying *State ex rel. Wood v. Indus. Comm.*, 78 Ohio St.3d 414 (1997), because *Wood* is distinguishable from this case. In *Wood*, four doctors examined the claimant, listed the same restrictions, and found that he was physically capable of sedentary work; whereas in the case before us, only one doctor, Dr. Gade-Pulido, opined relator was capable of performing any type of work.

{¶ 5} Relator concludes that according to the definition of light work set forth in Ohio Adm.Code 4121-3-34(B)(2)(b), relator would be: (1) unable to walk or stand to a significant degree, as documented by Dr. Dean DePerro, (2) unable to sit for most of the time as documented by Dr. DePerro and Shannon Valentine, and (3) unable to constantly push and/or pull materials as documented by Dr. Gade-Pullido, Dr. DePerro, and Valentine.

{¶ 6} Because the commission did not rely on the reports of Dr. DePerro and Valentine in concluding that relator was capable of light work, we will not consider the same. Therefore, we will not address relator's first and second arguments, as well as his third argument to the extent it invokes Dr. DePerro's and Valentine's reports. Furthermore, we note that relator's specific objection is that the commission could not rely on Dr. Gade-Pulido's report because it was internally inconsistent. Therefore, we will only address relator's third argument to the extent it invokes Dr. Gade-Pulido's report and consider the proposition that it was internally inconsistent. This argument is essentially the same raised to and addressed by the magistrate.

{¶ 7} The magistrate concluded:

> Contrary to relator's argument, nothing n the definition of light-duty work would require a worker to perform overhead

activities. As such, to the extent he asserts that Dr. Gade-Pulido's restriction that he avoid overhead use of his upper extremities precludes him from performing light-duty work, relator is incorrect. Further, nothing in the definition of light-duty work requires a worker to repetitively use their upper extremities. Exerting up to 20 pounds of force occasional, and/or up to 10 pounds of force frequently, does not necessarily require that those actions be performed repetitively. Also the fact that relator might not be able to perform a full range of light-duty work does not render Dr. Gade-Pulido's report inconsistent, nor does it invalidate the commission's conclusion that relator is capable of performing light-duty work. *See State ex. rel Wood v. Indus. Comm.*, 78 Ohio St.3d 414 (1997).

(Appended Magistrate's Decision at ¶ 32.)

{¶ 8} Ohio Adm.Code 4121-3-34(B)(2)(b) states:

"Light work" means exerting up to twenty pounds of force occasionally, *and/or* up to ten pounds of force frequently, *and/or* a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (i) when it requires walking or standing to a significant degree; or (ii) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (iii) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

(Emphasis added.)

{¶ 9} Given the use of the term "and/or," as well as the Supreme Court of Ohio's direction in *Wood*, we agree with the magistrate that the fact that relator might not be able to perform a full range of light-duty work, i.e. the constant pushing and/or pulling of materials, does not render Dr. Gade-Pulido's report inconsistent nor does it invalidate the commission's conclusion that relator is capable of performing light-duty work. We are not persuaded by relator's argument that the factual distinctions between *Wood* and the case before us render *Wood* inapplicable here. Here, the commission found, based on Dr. Gade-Pulido's report, there were some light-duty jobs which relator could perform. Accordingly, there is some evidence supporting the commission's conclusion that relator could do light work.

{¶ 10}  On review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law.  We therefore overrule relator's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled;*
*writ of mandamus denied.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Dominic J. Falgiani,          :

           Relator,          :

v.          :          No.  16AP-361

Industrial Commission of Ohio          :          (REGULAR CALENDAR)
and
Altronic Inc.,          :

           Respondents.          :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 25, 2016

*Heller, Maas, Moro & Magill Co., L.P.A., Joseph A. Moro,* and *Patrick J. Moro,* for relator.

*Michael DeWine,* Attorney General, and *Shawn P. Omen,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 11} Relator, Dominic J. Falgiani, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 12} 1. Relator has sustained two work-related injuries, the most significant occurring on August 6, 2008.  Relator's workers' compensation claims have been allowed

for the following conditions:  "claim number 08-357743 has been allowed for: bilateral shoulder sprain; bilateral shoulder impingement; depressive disorder; muscle strain to the right groin. Claim number 03-312446 has been allowed for: lumbosacral sprain."

{¶ 13} 2. Relator has not worked since the date of the second injury and underwent shoulder surgery in 2009.

{¶ 14} 3.  Relator filed an application for PTD compensation on November 2, 2015. According to his application, relator was 58 years of age, had graduated from high school, and was able to read, write, and perform basic math.  Relator indicated that he began receiving social security retirement in the amount of $1,147 per month in February 2013. Relator's work experience included work in food service at a hospital, retail sales as an owner/operator of a wine shop, and as a shipper/production worker for the employer of record.

{¶ 15} 4.  A psychological evaluation was performed by Robert L. Byrnes, Ph.D.  In his March 30, 2015 report, Dr. Byrnes opined that relator's psychological condition had reached maximum medical improvement ("MMI"), and that he had a moderate level of impairment in activities of daily living, social functioning, concentration, persistence and pace, as well as deterioration or decompensation in work-like settings.  Dr. Byrnes opined that relator had a 30 percent whole person impairment, that his "depression, reduced motivation, social withdrawal, lack of confidence and poor stress tolerance all combine to make successful return to work highly improbable."

{¶ 16} 5. Dean J. DePerro, D.O., examined relator for his allowed physical conditions.  In his March 30, 2015 report, Dr. DePerro noted that relator had severe limitations of his ability to use his upper extremities and that he had difficulty remaining in a seated or standing position for more than 10 to 20 minutes at a time because of groin pain.  Dr. DePerro noted his physical findings upon examination and opined that relator was permanently and totally disabled.

{¶ 17} Dr. DePerro completed a physical capacities evaluation noting that relator could sit for one hour at a time and for three hours in an eight-hour day, but could neither stand nor walk; occasionally lift or carry up to five pounds, had limitations regarding pushing/pulling activities with his hands; and could occasionally reach and continuously flex/rotate his neck.

{¶ 18} 6. A psychological evaluation was performed by Marian Chatterjee, Ph.D. In her December 29, 2015 report, Dr. Chatterjee identified the medical records which she

reviewed and opined that relator had a mild impairment concerning his activities of daily living, as well as concentration, persistence and pace, and a moderate impairment with regards to social functioning and adaptation. She further opined that relator had a 19 percent whole person impairment and that he would be able to work at a low stress job with minimal contact with others.

{¶ 19} 7. Karen Gade-Pulido, M.D., examined relator for his allowed physical conditions. In her January 5, 2016 report, Dr. Gade-Pulido identified the allowed conditions in relator's claim, as well as her physical findings upon examination, and specifically noted that impingement tests were negative. Thereafter, Dr. Gade-Pulido opined that relator's allowed physical conditions had reached MMI and that he was able to perform light-duty work provided he avoid overhead or repetitive use of his upper extremity. She concluded her report, stating:

> Mr. Falgiani is at MMI relative to the allowed conditions. He has received extensive treatment for these conditions over the years since his injuries and additional treatment at this time is not likely to result in a fundamental functional or physiological change in his allowed conditions. He reports significant impairment relative to his shoulders primarily, however his physical examination today demonstrates fairly unremarkable findings, aside from reduced range of motion, most notable in the more symptomatic right shoulder. His strength, including that of the shoulder girdle, is normal, and there is no evidence of muscle atrophy that would indicate significant loss of function. While he should avoid repetitive or overhead use of the upper extremities, his current history and examination findings do not preclude the use of his arms for a light physical demand category of work.

{¶ 20} 8. The vocational evidence in the record includes the following: (1) the December 22, 2009 Ohio Bureau of Workers' Compensation ("BWC") vocational rehabilitation closure report which indicated that during physical therapy/work conditioning, relator began having significant pain at the sight of his hernia repair (a non-work related condition), and his file was "closed due to medical instability of a non-work-related medical condition;" (2) the July 11, 2013 letter from CareWorks indicating that relator had been referred for vocational rehabilitation services; however, because they were "unable to contact [him] to confirm interest in Vocational Rehabilitation services," relator was deemed not currently ready for vocational rehabilitation services; (3) the November 12, 2013 letter from CareWorks again finding that relator was currently not

ready for vocational rehabilitation services because they had been unable to contact him to confirm his interest in those services; (4) the August 20, 2014 BWC vocational rehabilitation closure report indicating that relator's vocational rehabilitation file was being closed because he did not feel he was a candidate for even part-time employment; (5) the February 19, 2015 letter from CareWorks informing relator that his doctor, "Dr. Enyeart has provided limitations for only being []able to sit stand and walk for 1 hour each day;" and (6) the July 13, 2015 letter from CareWorks informing relator that his rehabilitation file was being closed due to "[l]ack of plan potential."

{¶ 21} 9. Relator submitted an employability assessment prepared by Shannon C. Valentine MRC, CRC. In her March 3, 2016 report, Valentine administered various testing indicating that relator's general educational skills were fair for activities of daily living, but would fall short of those required for formal retraining for a more skilled position within his physical limitations, that he had considerable difficulty when attempting to perceive tabular material, observe differences in copies, or proofread, would not be a viable candidate for entry-level, sedentary, clerk-related work, and that he was unable to complete the Minnesota Dexterity Test due to pain in his right and left shoulders. Assuming that he could perform sedentary work, Valentine opined that relator had neither marketable nor transferable skills given his past relevant work history and current limitations. Valentine indicated that relator did not appear to be able to perform light-duty work as indicated by Dr. Gade-Pulido, and that he did not have the physical tolerance to engage in competitive employment even on a part-time basis.

{¶ 22} 10. The statement of facts prepared following the submission of relator's application notes the following other relevant factors:

> Vocation evaluation report completed on 01-30-2015. Medical history includes hypogonadism, hyperlipidemia, osteoarthritis, avascular necrosis of bone of hip and a compression fracture to lumbar back due to roller coaster accident in 10/2000. Legal history includes a DUI in 1996 and attendance to a Alcohol Anonymous program. Injured Worker admits to using marijuana on a recreational basis. Injured Worker and his spouse also own 3 rental properties that they are responsible to make repairs and upkeep on.

{¶ 23} 11. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on March 17, 2016. The SHO relied on the medical reports of Drs.

Gade-Pulido and Chatterjee, and then addressed the non-medical disability factors finding that relator's age, education, and prior work experience to be positive, stating:

> The Staff Hearing Officer finds that the Injured Worker is 58 years of age, which is considered to be a person of middle age. The Injured Worker's age is a neutral factor for his potential for re-employment. In analyzing this factor, the Staff Hearing Officer, finds that the Injured Worker has approximately seven years in the workforce.
>
> The Staff Hearing Officer finds that the Injured Worker's education is a positive factor in the Injured Worker's potential for re-employment. The Injured Worker has a high school education graduating from Girard High School in 1975. The Staff Hearing Officer finds that the Injured Worker's ability to obtain his high school education does provide him with the necessary skills to obtain basic entry-level work. In addition, the record indicated that [] the Injured Worker attended business management and accounting classes at ITT Technical Institute in 1989. The Staff Hearing Officer finds that this level of education demonstrates the Injured Worker's ability to acquire and apply this knowledge.
>
> The Staff Hearing Officer finds that the Injured Worker's work experience is also a positive factor in his potential for re-employment. The Injured Worker's reported work experience on the IC-2 application consisted of four former positions of employment as a food service worker for a hospital, manager/partner of a State Liquor Store, owner/operator of a wine shop, and as a shipper/production worker for the Employer of record. The Staff Hearing Officer also finds per the Injured Worker's testimony at hearing that he owns some rental property. The Staff Hearing Officer finds that these former positions of employment consisted of positions ranging in skill from unskilled to skilled positions and in strength level from light to medium. The Staff Hearing Officer notes that he owned and operated two businesses per the IC-2 application, and in one of these positions, he managed four employees. The Staff Hearing Officer also finds that the Injured Worker's length of employment, particularly with the Employer of record, for nine years demonstrates his strong work ethic.
>
> The Injured Worker also held positions which provided him with decision-making skills and interpersonal skills in dealing with others particularly in his employment as the owner/operator of the State Liquor Store in which he indicated that he managed four employees. Based upon these

> positive work characteristics, the Staff Hearing Officer finds that the Injured Worker's work experience is a positive factor in his potential for re-employment.
>
> The Staff Hearing Officer finds that overall, the Injured Worker's non-medical disability factors are positive factors from a vocational standpoint. The Staff Hearing Officer finds that the Injured Worker's non-medical disability factors of education and work experience are positive factors and that the Injured Worker can perform or can be retrained to perform other occupations based upon these positive factors. The Staff Hearing Officer concludes that the Injured Worker's non-medical disability factors as a whole favor re-employment.

{¶ 24} 12. Relator's request for reconsideration was denied by order of the commission mailed April 22, 2016 and re-mailed on June 23, 2016.

{¶ 25} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 26} Relator makes the following three arguments: (1) Dr. Gade-Pulido's restriction that he avoid overhead and repetitive use of his upper extremities, by definition, does not constitute light-duty work; (2) the vocational report of Valentine, who administered various vocational tests, clearly demonstrates that he is not employable; and (3) the commission abused its discretion by finding that his vocational factors favored re-employment without explaining how they enhance his employability.

{¶ 27} For the reasons that follow, the magistrate finds that relator fails to demonstrate entitlement to a writ of mandamus.

{¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel.*

*Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 31} Relator first argues that the report of Dr. Gade-Pulido is internally inconsistent and the fact that she restricted him to avoid overhead and repetitive use of his upper extremity precludes an ability to perform light-duty work.

> Ohio Adm.Code 4121-3-34(B)(2)(b) states, in pertinent part:
>
> "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

{¶ 32} Contrary to relator's argument, nothing in the definition of light-duty work would require a worker to perform overhead activities. As such, to the extent he asserts that Dr. Gade-Pulido's restriction that he avoid overhead use of his upper extremities precludes him from performing light-duty work, relator is incorrect. Further, nothing in

the definition of light-duty work requires a worker to repetitively use their upper extremities. Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, does not necessarily require that those actions be performed repetitively. Also the fact that relator might not be able to perform a full range of light-duty work does not render Dr. Gade-Pulido's report inconsistent, nor does it invalidate the commission's conclusion that relator is capable of performing light-duty work. *See State ex rel. Wood v. Indus. Comm.*, 78 Ohio St.3d 414 (1997).

{¶ 33} Relator next argues the commission abused its discretion when it determined that his vocational factors favored re-employment. Relator asserts that the employability evaluation conducted by Valentine provided objective testing establishing that his education and work experience were not positive factors, and did not provide him with any transferrable skills.

{¶ 34} The commission is the expert on non-medical/vocational evidence and has the discretion to accept or reject any vocational evidence submitted. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997). To bind the commission to a rehabilitation report's conclusions would make the rehabilitation division, and not the commission, the ultimate evaluator of disability, contrary to *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112 (1982). *See also State ex rel. Singleton v. Indus. Comm.*, 71 Ohio St.3d 117 (1994).

{¶ 35} As the commission noted in its order, relator was a high school graduate and had pursued some business management and accounting classes. The commission determined that his prior occupations provided him with decision-making skills, as well as interpersonal skills dealing with others, noting that he had managed a state liquor store, owned and operated a wine shop, and currently owns some rental property. The magistrate finds that it was not an abuse of discretion for the commission to find that his age, education, and work experience were positive vocational factors.

{¶ 36} Lastly, relator argues that the commission failed to explain how his positive vocational factors enhanced his ability to become re-employed. The SHO specifically noted that relator's high school education provided him with the necessary skills to obtain basic entry-level work and the ability to acquire and apply knowledge. The SHO also determined that the prior work position provided relator with decision-making skills and interpersonal skills in dealing with others. To the extent that relator seems to argue that the commission's order does not meet the requirements of *Noll,* the magistrate disagrees.

The commission stated the evidence upon which it relied and provided a brief explanation.  That is all that is required.

{¶ 37}  Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion when it denied his application for PTD compensation, and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).